UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANITA D. HUDSON,

                    Plaintiff,                1:17-CV-00463 (MAT)
        -v-                                   **DECISION AND ORDER**

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                    Defendant.
_____


## INTRODUCTION

Anita D. Hudson ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"),1 denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this matter is remanded, as Commissioner's decision contains errors of law and is not supported by substantial evidence.

_____
1 Nancy A. Berryhill is no longer serving in this position. The Clerk of Court therefore is directed to substitute "The Commissioner of Social Security" for "Nancy A. Berryhill, Acting Commissioner of Social Security" as the defendant in this action. See 20 C.F.R. § 422.210(d).

**PROCEDURAL BACKGROUND**

On December 9, 2013, Plaintiff protectively filed for DIB, alleging disability beginning February 15, 2013. (Administrative Transcript ("T.") 123, 193-95). The claim was initially denied on February 7, 2014, and Plaintiff timely requested a hearing. (T. 139-48). A hearing was conducted on February 1, 2016, in Buffalo, New York by Administrative Law Judge Susan Smith ("the ALJ"). (T. 87-122). Plaintiff appeared with her attorney and testified. A vocational expert ("VE") also testified.

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (T. 75). At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, cervical disc herniation and radiculopathy, was status post cervical discectomy and fusion at C5-C7, and had left shoulder tendinopathy with a labral tear and chronic pain. (T. 75-77). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any impairment in the Listing of Impairments. (T. 77). Before proceeding to step four, the ALJ found

that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with certain restrictions. (T. 77). At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work as a school bus driver or as a certified nurse's aide. (T. 81). At step five, the ALJ found that Plaintiff can perform the requirements of representative occupations such as document preparer (Dictionary of Occupational Titles ("DOT") No. 249.587-018, unskilled, sedentary); inspector (DOT No. 669.687-014, unskilled, sedentary); and assembler (DOT No. 715.687-114, unskilled, sedentary), with 50,000; 125,000; and 170,000 positions, respectively, in the national economy. (T. 81-82). The ALJ issued an unfavorable decision on September 16, 2015. (T. 73-82). Plaintiff timely requested review of the ALJ's decision by the Appeals Council. (T. 66-69). The Appeals Council denied Plaintiff's request for review on March 2, 2016, making the ALJ's decision the final decision of the Commissioner. (T. 1-7). Plaintiff timely instituted a civil action in this Court on February 23, 2017. (Docket No. 1).

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual

findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

Plaintiff contends that remand is warranted for the following reasons: (1) the ALJ improperly weighed the opinions of Plaintiff's physicians; (2) the ALJ improperly assessed Plaintiff's subjective

complaints; and (3) the ALJ incorrectly found the Plaintiff could perform other work in the national economy. Defendant argues that the ALJ did not commit legal error and that her determination was supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court finds that the Commissioner's decision contains errors of law and is unsupported by substantial evidence. Therefore, the Court remands the matter to the Commissioner for further proceedings consistent with this Decision and Order.

## I. The ALJ Failed to Properly Consider and Weigh the Medical Opinions of Plaintiff's Treating Physicians (Plaintiff's Argument I)

The Plaintiff contends that the ALJ did not properly consider and weigh the medical opinions of her treating physicians Dr. Zair Fishkin, Dr. A. Marc Tetro, and Dr. Eugene Gosy; independent medical examiners Dr. Donald Jacob and Dr. Steven Hausmann. who examined her in connection with her Workers Compensation claim; and consultative examiner Dr. Donna Miller, who examined her at the Commissioner's request. (Plaintiff's Brief (Docket No. 12-1) ("Pl's Br.") at 18-22).

The treating physician rule requires the ALJ to give a treating physician's opinion "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); <u>Clark v. Commissioner of Soc. Sec.</u>, 143 F.3d 115, 118 (2d Cir. 1998). When an ALJ does not afford controlling weight to a treating physician's opinion, the regulations require that the ALJ provide "good reasons" for choosing to discount the opinion of the treating physician. 20 C.F.R. § 404.1527(c)(2). An ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how the reasons affected the weight given denotes a lack of substantial evidence." <u>Harris v. Colvin</u>, 148 F.Supp.3d 435, 441 (W.D.N.Y. 2016) (citations omitted).

Here, the ALJ indicated she assigned Dr. Tetro's and Dr. Fishkin's opinions "significant weight" because they were "likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Their opinions and conclusions as to the claimant's limitations and capacity to work are well supported by substantial evidence." (T. 79). Plaintiff argues that while the ALJ gave significant weight to the opinions of Dr. Fishkin and Dr. Tetro, the ALJ erred in engaging in impermissible cherry-picking of evidence by not

adopting specific portions of their opinions that were more favorable to Plaintiff. See Pl's Br. at 19-20.

Plaintiff argues that it is improper for the ALJ to "simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims." Harris, 149 F.Supp.3d at 446 (citing Lopez v. Sec'y of Dep't of Health and Human Servs., 728 F.2d 148, 150-51 (2d Cir. 1984)). "It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that supports his determination." Nix v. Astrue, 07-CV-344, 2009 WL 3429616, at *6 (W.D.N.Y. Oct. 22, 2009) (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); other citation omitted). An ALJ cannot "ignore an entire line of evidence that is contrary to [his] findings." Id. (quoting Zurawski v. Halter, 245 F.3d 881, 888 (7th Cir. 2001); other citation omitted; alteration in original)).

**Dr. Fishkin**

Dr. Fishkin treated Plaintiff exclusively for her cervical injuries. Plaintiff was initially injured working as a certified nurse's aide in February 2013, and was diagnosed with a shoulder sprain, degenerative joint disease, and tendonitis. (T. 93-94, 311-17). On July 26, 2013, Dr. Fishkin performed a cervical

discectomy and fusion at the C5-C7 position on Plaintiff. (T. 375-77). Dr. Fishkin indicated that Plaintiff was slow to heal from the surgery. (T. 349). He reported that Plaintiff had ongoing complaints of cervical pain and continued to display an abnormal cervical range of motion. (Id.).

First, Plaintiff argues that the ALJ improperly discounted Dr. Fishkin's statements that Plaintiff was "100% disabled," and likewise, Dr. Gosy's statements that she was "75% disabled." Pl's Br. at 19-20, 22. However, the regulations reserve the determination of whether a claimant is disabled to the Commissioner. 20 C.F.R. § 404.1527(d)(1). This Circuit has repeatedly held that "[a] treating physician's statement that a claimant is disabled cannot itself be determinative." Claymore v. Astrue, 519 F. App'x 36, 38 (2d Cir. 2013) (unpublished opn.) (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)). The Commissioner is "responsible for making the determination or decision whether [the claimant] meet[s] the statutory definition of disability." (Id.) (citing 20 C.F.R. § 404.1527(d)(1)). The ALJ did not err in giving these statements little weight.

Conversely, the ALJ did err by failing to properly weigh Dr. Fishkin's opinion, which first required the ALJ to develop the record to clarify certain inconsistencies in Dr. Fishkin's RFC

findings. On October 9, 2014, Dr. Fishkin adopted the RFC reported by occupational therapist Joseph J. Higgins and indicated it was to supersede his (Dr. Fishkin's) prior RFC findings. (T. 613-16). However, this report contains several inconsistencies. Notably, the occupational therapist reported both that Plaintiff could perform sedentary work and could not perform sedentary work. (T. 548). Moreover, the occupation therapist reported restrictions that are inconsistent with being able to perform sedentary work including that Plaintiff could "occasionally" lift over ten pounds; could "never" to "occasionally" stand and walk; and could push and pull over forty pounds "occasionally." See 20 C.F.R. § 404.1567(a) (defining "sedentary work" as involving lifting no more than ten pounds at a time or lifting lightweight items, and if walking and standing are required occasionally); see also Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (stating that sedentary work generally involves up to two hours of standing or walking in an eight-hour work day).

Further, Dr. Fishkin's report contains inconsistencies with regard to Plaintiff's ability to perform certain functions. First, it was reported that Plaintiff could stand for one to three hours per eight-hour work day, but on the next page it was indicated that Plaintiff could "never" to "occasionally" stand. (T. 547-48).

Then, it was indicated that Plaintiff could walk for one to two hours per eight-hour work day, but also that Plaintiff could "never" to "occasionally" walk. (Id.). Likewise, the occupational therapist indicated that Plaintiff was limited in her ability to reach with her both her arms, but on the next page, he reported that Plaintiff could "never" to "occasionally" reach with both arms. (Id.). Dr. Fishkin accepted in their entirety the RFC findings reported by Higgins but did not make note of these inconsistencies or provide clarification.

The ALJ failed to fully develop the record to correct these inconsistencies, especially since some of these limitations would prevent the Plaintiff from performing the exertional requirements of the jobs that the ALJ found she could perform at step five. See Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (holding that "if an ALJ perceives inconsistences in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly").

**Dr. Tetro**

Likewise, the ALJ erred in weighing the opinion of treating physician Dr. Tetro by failing to develop the record and recontact Dr. Tetro for clarification. The ALJ is required to develop the

record in cases where there is a "conflict or ambiguity" about a critical finding. Rolon v. Comm'r of Soc. Sec., 994 F. Supp.2d. 496, 504 (S.D.N.Y. 2014) (citing 20 C.F.R. §§ 404.1512(e)(1); 416.912(e)(1)).

Plaintiff treated with Dr. Tetro exclusively for her left shoulder joint injuries. (T. 437). Based on an MRI dated May 20, 2013, Dr. Tetro diagnosed Plaintiff with a left shoulder impingement syndrome, a left shoulder glenoid labral tear, and left shoulder AC joint arthrosis. (T. 351). Dr. Tetro consistently reported that Plaintiff had an abnormal range of motion in her left shoulder, positive Neer's tests, positive Hawkins' tests, and continuing pain in her left shoulder. He believed that the Plaintiff was a candidate for a left shoulder arthroscopy and decompression. (T. 388-89).

Dr. Tetro additionally consistently reported that Plaintiff was unable to engage in repetitive reaching or overhead activity with her left shoulder. The ALJ's RFC, however, omits the limitation that Plaintiff cannot engage in "overhead activity with her left shoulder" and therefore, the ALJ engages in a selective parsing of Dr. Tetro's opinion by not providing an explanation for rejecting this portion of his opinion. It is also unclear what Dr. Tetro includes in his definition of no "overhead activity," which

is a finding that could change the VE's testimony at step five. Dr. Hausmann later opined that Plaintiff cannot "lift overhead with her left arm," and it is possible that Dr. Tetro meant to include this limitation as well as others. (T. 456). The ALJ has a duty to seek clarification to resolve this ambiguity by contacting Dr. Tetro. Therefore, the ALJ's weighing of Dr. Tetro's opinion is not supported by substantial evidence.

**Dr. Jacob**

Plaintiff also argues that the ALJ engaged in a selective analysis of consultative examiner Dr. Jacob's opinion despite giving it significant weight. See Pl's Br. at 21-22. In doing so, the ALJ engaged in impermissible cherry-picking of Dr. Jacob's opinion.

The ALJ noted that Dr. Jacob "opined that the claimant's cervical spine and left shoulder range of motion [is] disproportional to the findings on the MRIs and objective findings." (T. 80). However, with respect to Plaintiff's shoulder's range of motion, the ALJ mischaracterizes Dr. Jacobs' statement, which went on further to state that while "the range of motion [Plaintiff] displays in her left shoulder is out of proportion with the underlying pathology demonstrated on [the] MRI. It is possible that she has more severe pathology not

visualized on [the] MRI and in that case, she would benefit from left shoulder arthroscopic surgery." (T. 641). Moreover, with respect to both Plaintiff's spinal and left shoulder injuries, the ALJ ignores other portions of Dr. Jacob's opinion that are more favorable to Plaintiff.

Dr. Jacob found restrictions of no repetitive twisting or bending of the neck, no work above waist level with the left hand or arm, and no pushing or pulling over ten pounds occasionally or two pounds frequently. (T. 640). These limitations are not included in the ALJ's RFC, and she offers no explanation for the omissions. Also, Dr. Jacob indicated that he thought Plaintiff would likely significantly benefit from left shoulder arthroscopic surgery and that Plaintiff should receive further electrodiagnostic studies to see if her cervical condition was improving. (T. 640-41). He noted that Plaintiff's symptoms became worse after the accident. (T. 641). The ALJ engages in a selective analysis of Dr. Jacob's opinion by including evidence that was favorable to Plaintiff in her RFC finding and by ignoring the portions of Dr. Jacob's opinion that would have supported a more restrictive RFC.

**Dr. Hausmann**

At the request of the Workers' Compensation carrier, Dr. Hausmann examined Plaintiff on April 8, 2014. The Court finds the

ALJ engaged in a selective analysis of Dr. Hausmann's opinion by including only those portions that supported her RFC determination. While the ALJ is correct that Dr. Hausmann reported that the Plaintiff had "quite a number of complaints [that] do not really match with her pathology," he goes on further to state that Plaintiff "does suffer from depression, which likely makes her symptoms more prominent." (T. 456). It is also unclear from his report which of Plaintiff's complaints do not match with her pathology.

The ALJ also ignored other portions of Dr. Hausmann's opinion that supported a more restrictive RFC finding. Dr. Hausmann opined that Plaintiff cannot stoop, bend, or squat; cannot lift overhead with her left arm; and cannot lift above the waist anything of more than three to four pounds. (Id.). All of these findings are more restrictive than the ALJ's RFC. The ALJ reasoned that while "objective medical evidence [did] not support [the] complete inability to stoop or squat . . . the rest of [the] opinion is supported by clinical findings and [is] consistent with the opinion made by [Plaintiff's] treating sources." (T. 80). Even if the complete inability to stoop or squat is not supported by substantial evidence, the ALJ still fails to include limitations that Plaintiff cannot lift with her left arm, cannot bend, and

14

cannot lift anything above the waist that is more than three to four pounds. The ALJ offers no explanation why these limitations were not included.

Dr. Hausmann further reports that Plaintiff has cervical and left shoulder sprain, exacerbation of cervical degenerative disc disease and spondylosis, and a left shoulder labral tear. (T. 456). He states that Plaintiff has not "reached maximum medical improvement" and that an "end result has not been achieved." (T. 456). The ALJ's weighing of Dr. Hausmann's opinion is not supported by substantial evidence as she also engages in a selective analysis of his opinion.

**Dr. Miller**

Plaintiff additionally argues the ALJ erred when she gave little weight to the opinion of consultative examiner Dr. Miller. On January 21, 2014, Dr. Miller reported an RFC that included "moderate to severe limitation for repetitive lifting, bending, carrying pushing, or pulling." (T. 447). The ALJ gave little weight to Dr. Miller's opinion because it was "rendered a short period out from the fusion, and Dr. Miller indicated a fair prognosis for improvement." (T. 78). This opinion, however, is inconsistent with Dr. Fishkin who reported two weeks prior that Plaintiff was slow to heal, and that he was expecting to see her making more progress.

(T. 349). The ALJ offers no explanation for the inconsistency. Rather, it is apparent from the rest of the ALJ's analysis that Dr. Miller's opinion was only given little weight because the ALJ could not find anything to select from it to support her RFC.

## II. The ALJ Erred in Assessing Plaintiff's Credibility (Plaintiff's Argument 2)

Plaintiff also argues the ALJ erred in the assessment of her credibility. See Pl's Br. at 23-27. The Court has reviewed the ALJ's credibility assessment, and for the reasons discussed below, finds that her assessment is not supported by substantial evidence.

The regulations provide guidelines for making credibility determinations where disability claims are based on subjective symptoms of pain. See 20 C.F.R. § 404.1529. First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(c). If so, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's function. 20 C.F.R. § 404.1529(c)(3). Where an ALJ believes the reported complaints exceed those that are supported by objective medical evidence, the ALJ must consider the following factors: the claimant's daily activities; the nature and intensity of her symptoms; the type, effectiveness, and adverse side effects

16

or treatment; and/or other measures which she used to relieve pain or other symptoms. Id.

In making her RFC determination, the ALJ stated she did not find Plaintiff to be credible because the "objective findings [did] not support the extent of her allegations nor [did] the evidence show that the claimant's impairments precluded her from performing basic work activities." (T. 78). The ALJ further indicated that "notably, at more than one evaluation it was noted that the claimant's presenting symptoms were not corroborated by objective measures." (Id.).

The regulations state that the ALJ "will not reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2). When "objective" medical evidence appears to be lacking, and symptoms appear to exceed such evidence, the regulations require the ALJ to consider the seven factors discussed above. Here, even if the ALJ's credibility analysis was not solely based on a lack of objective evidence, the ALJ's analysis is not based on subjective evidence as she engages in selective parsing of Dr. Hausmann's and Dr. Jacob's opinions.

On March 24, 2015, at the request of the Workers' Compensation Board, Dr. Jacob conducted an independent medical exam. (T. 639-57). Dr. Jacob opined that "[t]here are no objective findings that explain why [Plaintiff] demonstrates such marked restrictions in her cervical range of motion. At this time, the range of motion she displays in her left shoulder is also out of proportion to the underlying pathology demonstrated on the MRI." However, the ALJ omits that Dr. Jacob went on to state "[i]t is possible she has more severe pathology not visualized on the MRI and in that case, she would benefit from left shoulder arthroscopic surgery." (T. 641). In addition, Dr. Jacob found a more restrictive RFC than did the ALJ, which included that Plaintiff cannot engage in repetitive twisting or bending of the neck and cannot perform work above the waist level with her left hand or arm. (T. 640-41).

Dr. Jacob also diagnosed Plaintiff with left shoulder strain; cervical strain, distal supraspinatus and infraspinatus tendinopathy with evidence of small intrasubstance partial thickness labral tear, posterior disc extrusion at C5-6, and degenerative anterior spurring at C6-7. (T. 640). He further reported that improvement from "cervical nerve decompression surgery may take up to two years or longer" and that it would be helpful to conduct electrodiagnostic studies to see if Plaintiff's

condition was improving. (T. 641). Moreover, he indicated that Plaintiff's pain in her "arms, bilateral hand numbness, and weakness have actually gotten worse." (T. 642). Therefore, it is clear the ALJ took Dr. Jacob's statement out of context with respect to his other findings.

Likewise, while Dr. Hausmann indicated that Plaintiff has "quite a number of complaints [that] do not really match with her pathology," he still reported that Plaintiff would not be able to lift overhead with her left arm; would not be able to stoop, bend, or squat; and would not be able to lift above the waist height anything in excess of three to four pounds. (T. 456). The ALJ also ignored more favorable evidence in Dr. Hausmann's opinion as he diagnosed Plaintiff with cervical and left shoulder sprain, exacerbation of cervical degenerative disc disease and spondylosis, and a left shoulder labral tear. (Id.). He opined that Plaintiff was a candidate for left shoulder arthroscopic surgery and labral repair; and a possible shoulder decompression; therefore, he reported that Plaintiff had "not reached maximum medical improvement." (Id.). Thus, the ALJ's analysis involving a lack of objective evidence is not supported by substantial evidence as she engages in impermissible cherry-picking of Dr. Jacob's and Dr. Hausmann's opinions.

The other factor the ALJ considered in her credibility analysis was Plaintiff's daily activities. A claimant's daily activities are a proper factor for the ALJ to consider in assessing credibility. 20 C.F.R. § 404.1529(c)(3). The ALJ indicated she found that the Plaintiff was not fully credible because her impairments "did not preclude her from performing basic work activities" and that Plaintiff had reported "good activities of daily living including driving, preparing meals, and going shopping, which are not limited to the extend one would expect, given the complaints of disabling symptoms and limitations." (T. 78, 80). The Court finds this reason for discounting Plaintiff's credibility to be unpersuasive. It is well settled that "[t]here is a critical difference between activities of daily living and keeping a full-time job." Harris, 149 F.Supp.3d at 444-45 (other citations omitted). "The fact that an appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engaged in substantial gainful activity." Mecklenburg v. Astrue, 07-CV-760, 2009 WL 4042939, at *8 (W.D.N.Y. Nov. 9, 2009) (quoting Walston v. Gardner, 381 F.2d 580, 586 (6th Cir. 1967)).

Here, the ALJ's determination is not based on substantial evidence as she overstates Plaintiff's abilities. Plaintiff indicated that while she can drive, she does not drive much. (T. 302). She told Dr. Jacob she can only drive for ten minutes. (T. 642). Dr. Jacob also reported that Plaintiff "needs help dressing and putting on her shoes . . . she does not do any laundry, house cleaning or other housework." (T. 642). Likewise, the Plaintiff testified she paid "people to come and clean [her] bathroom, vacuum, wash clothes, [and] mop floors," and told Dr. Hausmann she has "difficulty with housework due to her pain." (T. 112, 302). Plaintiff additionally reported that while she does go grocery shopping, she only gets a few items at a time, can only carry two light bags, thinks she might be able to lift a gallon of milk, and goes with someone else. (T. 642, 115).

The ALJ's credibility analysis only addressed the objective evidence and Plaintiff's daily activities and is not supported by substantial evidence. Therefore, remand is required.

## III. The ALJ Incorrectly Found that the Plaintiff Could Perform Other Work in the National Economy (Plaintiff's Argument 3)

Plaintiff argues that the ALJ incorrectly concluded she could perform other work in the national economy because the hypotheticals presented to the VE did not include all of Plaintiff's limitations. See Pl's Br. at 29-31. At step five, the

VE found that Plaintiff could perform the work of a document preparer (DOT No. 249.587-018), inspector (DOT No. 669.687-014), and assembler (DOT No. 715.687-114). (T. 81-82).

While the Commissioner may depend on the testimony of a vocational expert to sustain her burden at step five, the "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." Abeuf v. Schweiker, 802 F.2d 601, 604-05 (2d Cir. 1981). Therefore, if the Commissioner relies upon the factual foundation of a hypothetical presented to the VE, it must contain an accurate description of Plaintiff's condition. See, e.g., Johnson v. Barnhart, 312 F. Supp.2d 415, 430 (W.D.N.Y. 2003) ("[T]he vocational expert's opinion is only useful if the factual information given accurately reflects the [claimant]'s condition.").

The VE expressly testified that work as a document inspector, inspector, and assembler required frequent twisting and bending of the neck and that these occupations would be impossible to perform by Plaintiff because of her restrictions. (T. 120). The VE expressly testified that Plaintiff would be unable to perform other work in the national economy if she could only occasionally reach

22

in all directions. (T. 118-19). Accordingly, the Court finds that the ALJ's decision was erroneous as a matter of law and not supported by substantial evidence.

Plaintiff also argues the ALJ erred by not considering her limitations that she cannot lift to the chest more than three to five pounds, can only use her left hand to lift two to four pounds, and cannot conduct overhead activities with her left arm. See Pl's Br. at 29-30. The VE was presented with a hypothetical that included "no work above the waist level that [requires] bilateral extremities." In response, the VE testified there would be no jobs in the national economy such an individual could perform, but the VE seemed to imply it was because "no repetitive twisting or bending of the neck" was also included in the hypothetical. (T. 120). The lack of clarity in the VE's testimony and the ALJ's use of hypotheticals that do not accurately reflect Plaintiff's limitations denotes a lack of substantial evidence at step five. See, e.g., Slattery v. Colvin, 111 F. Supp.3d 360, 375 (W.D.N.Y. 2015) ("If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a VE's response cannot constitute substantial evidence to support a conclusion of no disability.").

Lastly, Plaintiff contends that the ALJ erred by failing to consider whether she had a medical necessity to use a cane. See Pl's Br. at 30. Although medical providers indicated that Plaintiff reported using a cane, the record lacks medical documentation that establishes Plaintiff needed a cane. See SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (indicating that to find that a hand-held assistive device was medically required, there must be medical documentation establishing the need for a hand-held assistive device). Therefore, the Court cannot say that the ALJ erred as a matter of law in failing to include the use of an assistive device.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the Court finds that the Commissioner's decision contains legal error and is unsupported by substantial evidence. Accordingly, the Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. In particular, on remand, the Commissioner is directed to (1) recontact Dr. Tetro and Dr. Fishkin for clarification of their opinions; (2) reweigh the opinions of Dr. Tetro, Dr. Fishkin, Dr. Miller, Dr. Jacob, and Dr. Hausmann using the appropriate factors and legal principles; (3) perform a

new credibility assessment of Plaintiff using the appropriate factors and legal principles; and (4) conduct a new step five analysis. Defendant's Motion for Judgment on the Pleadings is denied. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


 

_____
HON. MICHAEL A. TELESCA
United States District Judge


Dated:     September __, 2018
              Rochester, New York